*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CALEB JAMES DEAN,

      Plaintiff-Appellant,

v

LOUIS WILLIAM STALLWORTH-HUNTER,

      Defendant-Appellee,

and

PROGRESSIVE MARATHON INSURANCE
COMPANY, and PROGRESSIVE MICHIGAN
INSURANCE COMPANY,

      Defendants.

UNPUBLISHED
March 28, 2024

No. 363313
Wayne Circuit Court
LC No. 21-004369-NI

Before: GADOLA, C.J., and MURRAY and YATES, JJ.

PER CURIAM.

In this no-fault case, plaintiff appeals by delayed leave granted[1] a trial-court order awarding defendant, Louis William Stallworth-Hunter, summary disposition under MCR 2.116(C)(10). The issue on appeal of plaintiff's third-party claim under MCL 500.3135 is whether a genuine issue of material fact exists as to whether plaintiff incurred an injury that constituted a "serious impairment of body function" under MCL 500.3135(5). Because we agree with the trial court that the record does not reveal any genuine issue of material fact, we affirm.

---

[1] *Dean v Stallworth-Hunter*, unpublished order of the Court of Appeals, entered March 24, 2023 (Docket No. 363313).

# I.  FACTUAL BACKGROUND

This case stems from a collision on October 6, 2020, between a Dodge Charger driven by plaintiff, Caleb James Dean, and a Chevrolet Trail Blazer driven by defendant Stallworth-Hunter. Plaintiff went to the hospital after the collision seeking medical treatment for a headache and ankle pain. In the hospital records, plaintiff's ankle pain was described as "sharp, moderate, [and] worse with walking[.]" Plaintiff was diagnosed with an "acute right ankle sprain[.]"

Plaintiff took part in follow-up medical visits on October 8, October 16, November 9, and December 16, 2020, and January 21 and 22, 2021. Additionally, plaintiff underwent a magnetic resonance imaging (MRI) scan of his foot ten days after the accident that revealed either a torn or sprained anterior talofibular ligament. The doctor interpreting the scan could not determine if that ligament was completely ruptured. Several months after the collision, plaintiff went to a podiatric physician complaining of ankle pain that he rated at 2.5 on a scale of 1 to 10 that had "decreased in the last month." The doctor observed that plaintiff had "mild pain with palpation of the anterior talofibular ligament[,]" and concluded that plaintiff had a "[h]ealing tear/sprain of the right anterior talofibular ligament" with "[p]ain [in his] right ankle."

On April 2, 2021, plaintiff filed this action alleging that defendant's negligence caused the collision, which was the source of plaintiff's injury. Plaintiff stated that before the accident he had been in reasonably good health, but since the accident he has been suffering from continuous pain that prevents him from engaging in activities that he previously undertook before the collision.

Defendant moved for summary disposition under MCR 2.116(C)(8) and (10), alleging that plaintiff had failed to establish that he had suffered a serious impairment of body function that was objectively manifested and that affected his ability to lead his normal life, as mandated by MCL 500.3135. In response, plaintiff insisted that the medical records established that he had suffered an "objectively manifested" impairment of a body function, and he also asserted that he continued to "experience some pain throughout his body." Plaintiff claimed that his injuries had affected his ability to lead his normal life by causing him to endure significant pain. Specifically, plaintiff took the position that his injuries hindered his ability to "drive, clean, cook, be active, play basketball, box, go to the gym, walk or stand, or perform other activities." Plaintiff contended that he gained weight because his impairment hindered his ability to be active.

On June 15, 2022, the trial court awarded defendant summary disposition pursuant to MCR 2.116(C)(10), ruling that defendant had presented evidence that plaintiff did not suffer a threshold injury and plaintiff had failed to rebut that evidence. The trial court stated that plaintiff's assertion that he "had pain" was insufficient to establish any threshold injury. The trial court observed that plaintiff's medical records did not show an objectively manifested injury, but instead established that "the doctor could not see an injury, maybe do [sic] to swelling, and so the doctor speculated as to an injury but the medical record notes whatever it was it was healing." The trial court further explained that "[t]he radiographic studies do not confirm an injury[,]" there was "no evidence of a medical limitation" of plaintiff's activities, and plaintiff had "full range of motion" in his ankle and "was improving." The trial court found that "[t]he medical diagnosis is a guess as to whether there is a tear and that was not further investigated nor determined by [plaintiff's] physician." Plaintiff thereafter moved for reconsideration, which the trial court denied in a written order issued on August 1, 2022. This appeal followed.

## II. LEGAL ANALYSIS

Plaintiff argues that the trial court erred when it awarded summary disposition to defendant under MCR 2.116(C)(10). Plaintiff insists there were genuine issues of material fact as to whether he suffered an "objectively manifested" impairment of "an important body function" that affected his ability to lead his normal life, as contemplated by MCL 500.3135(5). "We review de novo a trial court's decision on a motion for summary disposition." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). Summary disposition under MCR 2.116(C)(10) should be granted when "there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." A summary disposition motion under MCR 2.116(C)(10) "tests the *factual sufficiency* of a claim." *El-Khalil*, 504 Mich at 160. When addressing a motion of this type, "a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion." *Id*. " 'A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ.' " *Id*.

Under the no-fault act, "[a] person remains subject to tort liability for noneconomic loss caused by his or her ownership, maintenance, or use of a motor vehicle only if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement." MCL 500.3135(1). According to MCL 500.3135(5), courts must employ a three-part test to decide whether an injured person has suffered a "serious impairment of body function." First, an injured person has to establish that the impairment "is objectively manifested, meaning it is observable or perceivable from actual symptoms or conditions by someone other than the injured person." MCL 500.3135(5)(a). The focus is on the impairment, meaning it "is not on the injuries themselves, but how the injuries affected a particular body function." *McCormick v Carrier*, 487 Mich 180, 197; 795 NW2d 517 (2010) (quotation marks omitted). "[S]ubjective complaints of pain and suffering are insufficient to show impairment," but "evidence of a physical basis for that pain and suffering may be introduced to show that the impairment is objectively manifested." *Patrick v Turkelson*, 322 Mich App 595, 607; 913 NW2d 369 (2018), citing *McCormick*, 487 Mich at 198.

Second, the injured person has to demonstrate that the impairment "is an impairment of an important body function, which is a body function of great value, significance, or consequence to the injured person." MCL 500.3135(5)(b). This calls for "an inherently subjective" analysis, and "the relationship of that function to the individual's life must be considered." *Patrick*, 322 Mich App at 607 (quotation marks and citation omitted).

Third, the injured person must show the impairment "affects the injured person's general ability to lead his . . . normal life, meaning it has had an influence on some of the person's capacity to live in his . . . normal manner of living." MCL 500.3135(5)(c). This analysis "is inherently fact and circumstance specific to each injured person, must be conducted on a case-by-case basis, and requires comparison of the injured person's life before and after the accident." *Id*. Consequently, "there is no quantitative minimum as to the percentage of a person's normal manner of living that must be affected." *McCormick*, 487 Mich at 203.

Whether an injured person has suffered "serious impairment of body function" is a question of law for the court if the court finds either that "[t]here is no factual dispute concerning the nature and extent of the person's injuries[,]" MCL 500.3135(2)(a)(*i*), or that "[t]here is a factual dispute concerning the nature and extent of the person's injuries, but the dispute is not material to the

determination whether the person has suffered a serious impairment of body function . . . ." MCL 500.3135(2)(a)(*ii*). In all other cases, "whether there was a serious impairment of body function is for the jury and may not be decided as a matter of law." *Patrick*, 322 Mich App at 608.

Here, the trial court awarded summary disposition to defendant under MCR 2.116(C)(10),[2] finding that defendant presented evidence that plaintiff had not suffered a threshold injury, so the burden was on plaintiff to provide evidence that he did in fact suffer such an injury. The trial court determined that plaintiff's medical records did not show an objectively manifested injury.[3] Rather, the trial court stated that the medical records "show the doctor could not see an injury, maybe do [sic] to swelling, and so the doctor speculated as to an injury but the medical record notes whatever it was it was healing." Also, the trial court asserted that "[t]he radiographic studies do not confirm an injury to plaintiff." Although the trial court did not declare that plaintiff had failed to establish that the alleged impairment affected his ability to lead his normal life, the trial court's written order expressed skepticism that such an impact existed.

To establish a threshold injury, plaintiff had to show that his impairment was "objectively manifested." See MCL 500.3135(5)(a). Here, plaintiff was assessed at the hospital on the day of the collision. A physician there determined he had suffered an acute right ankle sprain and noted that plaintiff had pain when he walked. An MRI scan conducted ten days later revealed a torn or sprained ligament and swelling in plaintiff's ankle. And several months after that, an orthopedic surgeon noted that plaintiff was healing from a tear or sprain in his right foot.

Defendant contends that plaintiff merely made subjective complaints about ankle pain, but he presented no evidence of an objective basis for this complaint other than the inconclusive MRI scan. In support of this argument, defendant identifies portions of plaintiff's medical records from the day of the collision that indicate that plaintiff suffered no injury or a minor injury, that plaintiff was able to walk, and that plaintiff had full range of motion. To be sure, plaintiff was diagnosed at that time with an acute right ankle sprain, but the sprained ankle did not prevent plaintiff from walking. Also, the trial court found that, to the extent plaintiff suffered an injury, "it was healing." As a result, in relatively short order, plaintiff recovered from his sprained ankle.

The second element plaintiff has to prove is that the impairment was "of an important body function[.]" MCL 500.3135(5)(b). In its order, the trial court did not analyze whether plaintiff's impairment was of an important body function. Rather, the trial court granted summary disposition

---

[2] Defendant sought summary disposition under both MCR 2.116(C)(8) and (10). In its order, the trial court only analyzed defendant's request under MCR 2.116(C)(10). On appeal, both parties' arguments address summary disposition under MCR 2.116(C)(10), and do not address MCR 2.116(C)(8). This opinion is therefore limited to whether the trial court erred when it granted summary disposition under MCR 2.116(C)(10).

[3] In its order, the trial court referred to an "objectively manifested injury." We emphasize that the relevant inquiry is whether plaintiff has suffered an objectively manifested *impairment*. See MCL 500.3135(5)(a); *McCormick*, 487 Mich at 197.

to defendant strictly on the bases of the first and third elements of the analysis prescribed by MCL 500.3135(5). Therefore, we must move to the third element of the analysis.

To satisfy the third element prescribed by MCL 500.3135(5), plaintiff had to show that the impairment affected his ability to lead his normal life. MCL 500.3135(5)(c). The trial court found that plaintiff had presented no evidence of a medical limitation on his activities. Furthermore, the trial court expressed doubt about plaintiff's credibility, noting that he had difficulty remembering the doctors he saw and where they were located. Plaintiff stated that the impairment affected his ability to lead his normal life by hindering his ability to play basketball and box, which he used to do before the collision. He further stated he had difficulty engaging in other normal activities, like standing. Accordingly, plaintiff argued that his ability to lead his normal life was affected by the impairment. In its order, the trial court noted plaintiff's complaints that he gained weight and was unable to go to the gym or play basketball.

On the day of the collision, i.e., October 6, 2020, emergency treatment notes from Detroit Receiving Hospital stated plaintiff was "ambulatory at [the] scene[,]" he was in "no acute distress," his ankle examination revealed "no acute injury [or] fracture," but he "will likely continue to feel worse for 2 to 3 days." The report from that visit indicated that "[p]atient was discharged in good condition." At an office visit two days later on October 8, 2020, plaintiff weighed "132 kg," which is approximately 291 pounds. One month later, on November 9, 2020, plaintiff weighed "135.25 kg," which is 298.175 pounds. On December 16, 2020, plaintiff weighed "135.62 kg," which is 298.991 pounds. Five weeks after that, on January 21, 2021, plaintiff weighed "136.53 kg," which is 300.997 pounds. Finally, on March 16, 2021, plaintiff weighed "300 lb," so plaintiff's weight gain from the date of the accident, i.e., October 6, 2020, to his examination more than five months later on March 16, 2021, was less than ten pounds. Moreover, plaintiff reported that his ankle pain on March 16, 2021, had "decreased in the last month" and he had "mild pain with palpation." And at his deposition on December 10, 2021, plaintiff testified that "I don't have any pain now." Thus, the record reveals that plaintiff suffered a sprained ankle that did not impair his ability to walk on the date of the accident, that his pain diminished and eventually completely dissipated over time, and that he gained only a very modest amount of weight in the five-month period after the collision. In light of that evidence, we cannot say the trial court erred in concluding that no genuine issue of material fact existed as to whether plaintiff "suffered serious impairment of [a] body function" as that term is defined in MCL 500.3135(5).

Affirmed.

/s/ Michael F. Gadola
/s/ Christopher M. Murray
/s/ Christopher P. Yates